## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| PATAGONIA, INC., | ) | Civil No. |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| v. | ) | **COUNTERFEITING, TRADEMARK** |
| | ) | **INFRINGEMENT, UNFAIR** |
| MARDEN'S, | ) | **COMPETITION, DILUTION, AND** |
| | ) | **COPYRIGHT INFRINGEMENT** |
| Defendant. | ) | |
| | ) | **JURY TRIAL DEMANDED** |

This lawsuit seeks to stop Marden's ("Defendant" or "Marden's") from counterfeiting, infringing, and misusing Patagonia, Inc.'s ("Patagonia") trademarks. Defendant has promoted, marketed, offered, and sold apparel products that bear counterfeit replicas of Patagonia's famous trademarks and logos.  To stop this conduct, Patagonia alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Patagonia is a California corporation headquartered at 259 West Santa Clara Street, Ventura, California 93001.  Patagonia has been designing, developing, and marketing clothing for more than fifty years.  Today, Patagonia and the PATAGONIA brand are famous around the world for innovative apparel designs, quality products, and environmental and corporate responsibility.

2.     Defendant Marden's is a Maine corporation with its principal place of business at 100 Benton Avenue, Winslow, Maine 04901.

3.     Patagonia's trademark claims arise under the Trademark Act of 1946 (the Lanham Act), as amended by the Trademark Dilution Revision Act of 2006 (15 U.S.C. §§ 1051, *et seq.*).  Patagonia's claims for copyright infringement arise from Defendant's infringement of Patagonia's exclusive rights under the United States Copyright Act (17 U.S.C. §§ 101, *et seq.*).  This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 17 U.S.C. § 501 (copyright), 28 U.S.C. § 1331 (federal question), and 15 U.S.C. § 1121 (Lanham Act).

4.     This Court has personal jurisdiction over Marden's because Marden's is incorporated in Maine and has its principal place of business in Maine where it conducts its business that is the subject of this complaint.

5.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(a) because Marden's resides in this district, infringes Patagonia's intellectual property in this district, and a substantial part of the events giving rise to the claims asserted arose in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS
### Patagonia's History

6.   Patagonia was founded in the early 1970s to design and sell climbing clothes and other active sportswear.  The company adopted the brand "PATAGONIA" to differentiate a related business that designed and manufactured

climbing gear and tools. PATAGONIA was chosen as the trademark to call to mind romantic visions of glaciers tumbling into fjords, jagged windswept peaks, gauchos, and condors. Since at least 1973, the PATAGONIA brand has appeared on a multi-colored label inspired by a silhouette of the jagged peaks of the Mt. Fitz Roy skyline (the "P-6 logo").

7.    In the more than fifty years since Patagonia's business started, the PATAGONIA brand and its P-6 logo have become among the most identifiable brands in the world. Patagonia's products now include a wide range of apparel products and equipment, including T-shirts, hoodies, sweatshirts, and fleece, as well as technical products designed for climbing, skiing and snowboarding, surfing, fly fishing, and trail running, which are sold around the world.

8.    Over the years, Patagonia has been recognized and honored for its business initiatives, including receiving the Sustainable Business Counsel's first "Lifetime Achievement Award." In 1996, with an increased awareness of the dangers of pesticide use and synthetic fertilizers used in conventional cotton growing, Patagonia began the exclusive use of organically grown cotton and has continued that use for more than twenty years. It was a founding member of the Fair Labor Association®, which is an independent multi-stakeholder verification and training organization that audits apparel factories. Additionally, since 1985 Patagonia has pledged 1% of sales to environmental groups to preserve and

restore our natural environment, donating more than $140 million to date.  In 2002, Patagonia's founder, Yvon Chouinard, along with others, created a non-profit called 1% For the Planet® to encourage other businesses to do the same. Today, more than 1,200 member companies donate to more than 3,300 nonprofits through 1% For the Planet.  In 2012, Patagonia became one of California's first registered Benefit Corporations, ensuring Patagonia could codify into its corporate charter consideration of its workers, community, and the environment. In 2022, Patagonia's owners donated their holdings in the company to a Purpose Trust and nonprofits dedicated to fighting the environmental crisis and defending nature.

### Patagonia's Trademarks

9.    Patagonia owns numerous registrations for its distinctive P-6 logos and PATAGONIA trademarks, covering a wide-ranging assortment of products. Among these are the following U.S. trademark registrations:

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| **PATAGONIA** | 1189402 / Feb. 9, 1982 | Men's and Women's Clothing-Namely, Sweaters, Rugby Shirts, Walking Shorts, Trousers, Jackets, Mittens, Hoods and Rainwear | 08/1974 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  | 1294523 / Sept. 11, 1984 | Men's, Women's and Children's Clothing-Namely, Jackets, Pants, Vests, Gloves, Pullovers, Cardigans, Socks, Sweaters, Underwear, Shirts, Shorts, Skirts and Belts | 08/1974-1981 |
|  | 1547469 / July 11, 1989 | Men's, Women's and Children's Clothing- Namely, Jackets, Pants, Shirts, Sweaters, Vests, Skirts, Underwear Tops and Bottoms, Socks, Gloves, Mittens, Hats, Face Masks, Balaclava, Gaiters, Suspenders, and Belts | 08/1974-1981 |
|  | 1775623 / June 8, 1993 | Luggage back packs, and all-purpose sports bags | 08/1988 |
| **PATAGONIA** | 1811334 / Dec. 14, 1993 | Luggage, back packs, fanny packs and all-purpose sport bags, footwear, ski bags and ski gloves | 08/1990 |
| **PATAGONIA** | 2260188 / July 13, 1999 | Computerized on-line ordering activities in the field of clothing and accessories; Providing information in the field of technical clothing and accessories for use in recreational, sporting and leisure activities; providing | 10/1995 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
| | | information in the field of existing and evolving environmental issues | |
| **PATAGONIA** | 2662619 / Dec. 17, 2002 | Retail store services featuring clothing, footwear, luggage and a wide variety of sporting goods and accessories | 06/1986 |
| **PATAGONIA** | 5491401 / June 12, 2018 | Reusable bottles sold empty; insulated containers for food or beverage for domestic use; cups, mugs and growlers | 09/2014 |
| **PATAGONIA** | 5561006 / Sept. 11, 2018 | Stickers; paper banners; fiction and non-fiction books on a variety of topics; posters; non-magnetically encoded gift cards; photographs | 12/1991 |
|  | 4500490 / March 15, 2014 | Shirts, pants, shorts. | 01/2012 |
|  | 4773290 / July 14, 2015 | Backpacks; luggage, namely, duffel bags, sling bags, hip packs, waist bags, and daypacks; Water-repellent and waterproof fishing packs in the nature of packs that are specially adapted for fishing equipment, namely, | 01/2014 |

| Trademark | Reg. No. / Reg. Date | Goods | Date of First Use |
|---|---|---|---|
|  |  | backpacks, daypacks, duffel bags, sling bags, hip packs, waist bags, and gear bags in the nature of fishing reel bags, fishing tackle bags, and sportsman's fishing bags in nature of duffel bags. |  |

These registrations for the PATAGONIA mark and logos are in full force and effect. The registrations have become incontestable under 15 U.S.C. § 1065. A color image of the P-6 logo follows:



Patagonia also owns registered and common law rights for its well-known WORN WEAR mark and below design mark (collectively, the "WORN WEAR" Marks") for retail services, along with individual apparel products (and other related goods) and its repair and trade-in programs. *See* https://wornwear.patagonia.com/. Among these are the following U.S. trademark registrations and applications:

| Trademark | Reg./App. No. / Reg./App. Date | Classes/Goods | Date of First Use |
|---|---|---|---|
| **WORN WEAR** | Reg. No. 4955520 / May 10, 2016 | 035 Retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories | Oct. 07, 2012 |
|  | Reg. No. 4623527 / Oct. 21, 2014 | 035 Retail store services featuring vintage and used clothing, footwear, luggage, and outdoor gear and accessories | Oct. 07, 2012 |
| **WORN WEAR** | App. No. 97380428 / Apr. 25, 2022 | 018 Backpacks; All-purpose carrying bags; Duffle bags; Messenger bags; Travel bags<br><br>025 Clothing, namely, tops, bottoms, shirts, jackets, coats, parkas, vests, pullovers, sweaters, sweatshirts, hooded sweatshirts, dresses, skirts, pants, jeans, shorts, board shorts | Sep. 01, 2017 / Oct. 07, 2012 |
|  | App. No. 97387380 / Apr. 28, 2022 | 018 Backpacks; All-purpose carrying bags; Duffle bags; Messenger bags; Travel bags<br><br>025 Clothing, namely, tops, bottoms, shirts, jackets, coats, parkas, vests, pullovers, sweaters, sweatshirts, hooded sweatshirts, dresses, skirts, | Sep. 01, 2017 / Oct. 07, 2012 |

| Trademark | Reg./App. No. / Reg./App. Date | Classes/Goods | Date of First Use |
|---|---|---|---|
| | | pants, jeans, shorts, board shorts | |

The registrations for the WORN WEAR Marks are in full force and effect. The registrations have become incontestable under 15 U.S.C. § 1065.

Collectively, these marks, Patagonia's other registered trademarks, and its common law marks are referred to as the "PATAGONIA trademarks." Patagonia also owns registered copyrights for the P-6 logo and P-6 Trout logo (Registration Nos. VA 1-801-788 and VA 2-322-548).

10.  The PATAGONIA trademarks are distinctive, arbitrary and fanciful, entitled to the broadest scope of protection, and certain of the PATAGONIA trademarks are registered worldwide.

11.  For many years prior to the events giving rise to this Complaint and continuing to the present, Patagonia annually has spent enormous amounts of time, money, and effort advertising and promoting the products on which its

PATAGONIA trademarks are used.  PATAGONIA brand products are advertised in a variety of contexts and media, including in print and on the Internet.  In addition to advertising by Patagonia, the PATAGONIA trademarks are also advertised and promoted and presented at point of sale by numerous retailers.  Consumers, accordingly, are exposed to the PATAGONIA trademarks in a wide range of shopping and post-sale contexts.

12.   Patagonia has sold its PATAGONIA brand products all over the world, including throughout the United States and Maine.  Through its promotion and investment in its brand and extensive sales, publicity, awards, and leadership in sustainable sourcing practices, Patagonia has acquired enormous goodwill in its PATAGONIA trademarks.  The PATAGONIA trademarks are famous within the meaning of the Trademark Dilution Revision Act, enjoy strong consumer recognition, and are recognized around the world and throughout the United States by consumers as signifying high-quality products made by a responsible company.

## **Defendant's Promotion and Sale of Counterfeit Products**

13.   In blatant disregard of Patagonia's rights in the PATAGONIA trademarks – and without authorization from Patagonia – Defendant has promoted, offered for sale, and sold counterfeit Patagonia products, including jackets, bearing one or more reproductions of Patagonia's federally registered

marks (the "Counterfeit Products").  Examples of the Counterfeit Products are

below.









14. On information and belief, Defendant has offered for sale and sold the

Counterfeit Products throughout its chain of thirteen retail stores in Maine,

including its stores in Scarborough, Waterville, Gray, Biddeford, and Sanford,

Maine.  In its Scarborough, Maine location, Defendant has displayed for sale at

one time approximately 90 units of Counterfeit Products and likewise has dozens

to several dozens of the Counterfeit Products on display at one time at various of

its other locations, including its Gray, Biddeford, and Sanford, Maine locations.

Examples of the displays are below.



15.    Based on the Counterfeit Products themselves, and the scope of

Defendant's promotion and distribution of the Counterfeit Products, Defendant engaged in the conduct described in this Complaint with knowledge of Patagonia's rights in the PATAGONIA trademarks, rendering such conduct knowing, willful, intentional, and/or malicious.

16.   The Counterfeit Products that are manufactured, distributed, imported, offered for sale, and sold by or at the direction of Defendant have not been licensed, authorized, sponsored, endorsed, or approved by Patagonia.  Defendant is not associated, affiliated, or connected with Patagonia, or licensed, authorized, sponsored, endorsed, or approved by Patagonia in any way.

17.   The Counterfeit Products are visually identical to and compete with goods sold by Patagonia, and the parties' respective goods are sold through similar and overlapping channels of trade.  For example, Patagonia sells its genuine products in many retail locations in Maine, including through its outlet store in Freeport and its 27 authorized dealers in Maine.  The Counterfeit Products, however, are of a vastly inferior quality to Patagonia's genuine apparel products, causing further harm to Patagonia, its reputation and goodwill, and the PATAGONIA trademarks.

18.   Defendant's copying of Patagonia's copyrighted P-6 logo and P-6 Trout logo violates Patagonia's rights in the designs and has caused damage to Patagonia.

19.    Defendant's wholesale copying of Patagonia's trademarks is likely to deceive, confuse, and mislead actual and prospective consumers regarding the source of the Counterfeit Products, including whether the Counterfeit Products are genuine Patagonia products, and/or whether Patagonia has sponsored, authorized, or is somehow affiliated with Defendant.  Such consumers are likely to be deceived, confused, and misled before, during and after purchase. Patagonia, consequently, has no alternative but to protect its goodwill and famous trademarks by obtaining an injunction against Defendant's further promotion, distribution, offer, and sale of the Counterfeit Products.

20.    Patagonia is informed and believes that Defendant has sourced, marketed, and sold substantial quantities of the Counterfeit Products, and has obtained and continues to profit from such sales.

21.  Defendant's actions have caused and will cause Patagonia irreparable harm for which money damages and other remedies are inadequate.  Unless Defendant is restrained by this Court, Defendant will continue expanding its illegal activities and otherwise continue to cause irreparable damage and injury to Patagonia by, among other things:

a.    Depriving Patagonia of its statutory rights to use and control use of its trademarks;

16

b.    Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the Counterfeit Products;

c.    Causing the public falsely to associate Patagonia with Defendant and/or its products;

d.    Causing the public falsely to believe Patagonia has collaborated with Defendant, entered a co-branding relationship with Defendant, or is otherwise associated with Defendant and/or its products;

e.    Causing incalculable and irreparable damage to Patagonia's goodwill and diluting the capacity of its famous PATAGONIA trademarks to differentiate its products from those of its competitors;

f.    Causing incalculable and irreparable damage to Patagonia's licensing and collaboration programs, and to Patagonia's ability to control its brand partnerships and to associate itself with entities who are specifically aligned to Patagonia's company mission; and

g.    Causing Patagonia to lose sales of its genuine PATAGONIA products.

22.    Accordingly, in addition to other relief, Patagonia is entitled to injunctive relief against Defendant.

## <u>FIRST CLAIM</u>
## <u>FEDERAL TRADEMARK COUNTERFEITING</u>
## (15 U.S.C. §§ 1114-1117)

23.  Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

24.  Defendant has used in commerce marks that are identical to, or substantially indistinguishable from, the federally registered PATAGONIA trademarks, in connection with goods falling within the scope of Plaintiffs' federal registrations.

25.  Defendant's actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered PATAGONIA trademarks in violation of 15 U.S.C. § 1116(d).

26.  Because Defendant has caused, and is likely to continue causing, substantial injury to the public and to Patagonia for which Patagonia has no adequate remedy at law; because this is an exceptional case; and as a direct and proximate result of Defendant's conduct, Patagonia is entitled to recover Defendant's unlawful profits and Patagonia's damages, and treble the amount of its damages and Defendant's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a); or statutory damages and reasonable attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the counterfeit goods and labels, documents, and proceeds related to the scheme under 15 U.S.C. § 1116.

27.   Patagonia is entitled to injunctive relief pursuant to 15 U.S.C.

§ 1116(a) that requires Defendant to stop promoting, distributing, offering, and

selling the Counterfeit Products, and any other mark or design similar to the

PATAGONIA trademarks.

**SECOND CLAIM**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. §§ 1114-1117)**

28.   Patagonia realleges and incorporates by reference each of the

allegations contained elsewhere in this Complaint.

29.   Defendant has used, in connection with the sale, offering for sale,

distribution, or advertising of their Counterfeit Products, words and symbols that

infringe upon Patagonia's PATAGONIA trademarks.

30.   These acts of trademark infringement have been committed with the

intent to cause confusion, mistake, or deception, and are in violation of 15 U.S.C.

§ 1114.

31.   As a direct and proximate result of Defendant's conduct, Patagonia is

entitled to recover Defendant's unlawful profits and Patagonia's damages, and

treble the amount of its damages and Defendant's profits, and to an award of

attorneys' fees under 15 U.S.C. § 1117(a).

32.   Patagonia is entitled to injunctive relief pursuant to 15 U.S.C.

§ 1116(a) that requires Defendant to stop promoting, distributing, offering, and

selling the Counterfeit Products, and any other mark or design similar to the

PATAGONIA trademarks.

### THIRD CLAIM
### FEDERAL UNFAIR COMPETITION

**(False Designation of Origin and False Description – 15 U.S.C. § 1125(a))**

33.   Patagonia realleges and incorporates by reference each of the

allegations contained elsewhere in this Complaint.

34.   Defendant's conduct as alleged in this Complaint constitutes the use of

symbols or devices tending falsely to describe the Counterfeit Products, within

the meaning of 15 U.S.C. § 1125(a)(1).  Defendant's willful conduct is likely to

cause confusion, mistake, or deception by or in the public as to the affiliation,

connection, association, origin, sponsorship, or approval of the Counterfeit

Products to the detriment of Patagonia and in violation of 15 U.S.C. § 1125(a)(1).

35.   As a direct and proximate result of Defendant's conduct, Patagonia is

entitled to recover up to treble the amount of Defendant's unlawful profits and

Patagonia's damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

36.   Patagonia is entitled to injunctive relief pursuant to 15 U.S.C.

§ 1116(a) that requires Defendant to stop promoting, distributing, offering, and

selling the Counterfeit Products, and any other mark or design similar to the

PATAGONIA trademarks.

# FOURTH CLAIM
## FEDERAL DILUTION OF FAMOUS MARK
### (Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c))

37.    Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

38.    Patagonia's PATAGONIA trademarks (including the P-6 logo) are distinctive and famous within the meaning of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c), and were famous prior to Defendant's adoption of the Counterfeit Products.

39.    Defendant's conduct is likely to cause dilution of Patagonia's PATAGONIA trademarks by diminishing its distinctiveness and/or reputation in violation of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

40.    As a direct and proximate result of Defendant's conduct, Patagonia is entitled to recover up to treble the amount of Defendant's unlawful profits and Patagonia's damages, and an award of attorney's fees under 15 U.S.C. §§ 1116(a), 1117(a), and 1125(c).

41.    Patagonia is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116(a) and 1125(c) that requires Defendant to stop promoting, distributing, offering, and selling the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

## FIFTH CLAIM

## FEDERAL COPYRIGHT INFRINGEMENT

### (17 U.S.C. §§ 101, *et seq*., and 17 U.S.C. §§ 501, *et seq*.)

42.   Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

43.   Patagonia owns the copyrights in its P-6 logo and P-6 Trout logo, which are federally registered and were registered prior to Defendant's copying.

44.   Defendant has copied, advertised, offered for sale, and/or sold substantially similar copies of the P-6 logo and P-6 Trout logo without Patagonia's authorization or permission and in violation of Patagonia's exclusive rights in its copyrights.

45.   Defendant's unlawful reproduction, advertisement, distribution, and/or sale of Patagonia's proprietary designs constitutes copyright infringement. Patagonia alleges that Defendant acted willfully and in bad faith when it reproduced Patagonia's copyrighted works (in identical or substantially similar forms), and advertised, distributed, displayed, and/or sold the Counterfeit Products.

46.   Defendant's infringement alleged in this complaint has caused and, if not enjoined, will continue to cause Patagonia to suffer irreparable harm for which there is no adequate remedy at law, and has also caused damage to Patagonia in an amount which cannot be accurately computed at this time but will

be proven at trial.

47.   As a direct and proximate result of Defendant's conduct, Patagonia is entitled to injunctive relief, as well as actual damages and any profits earned by Defendant as a result of its infringements, or statutory damages of up to $150,000 for each work infringed, at Patagonia's election, pursuant to 17 U.S.C. § 504.

## SIXTH CLAIM
## TRADEMARK INFRINGEMENT UNDER MAINE STATUTORY LAW
### (10 M.R.S.A. § 1529)

48.   Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

49.   Patagonia is the owner of numerous registrations for the PATAGONIA trademarks, as well as common law rights in those marks.

50.   Defendant has infringed upon Patagonia's PATAGONIA trademarks without the consent of Patagonia and in connection with the sale, offering for sale, distribution, or advertising of their Counterfeit Products.

51.   Defendant's infringement of Patagonia's PATAGONIA trademarks is likely to cause confusion, mistake, and deception as to the source of the origin of Defendant's offerings.

52.   Defendant uses the Counterfeit Products to enhance the commercial value of Defendant's offerings.

53.  Defendant's acts violate Patagonia's trademark rights under 10 M.R.S.A. § 1529.

54.  Patagonia is entitled to monetary damages and injunctive relief prohibiting Defendant from selling the Counterfeit Products, or any other products bearing a mark or design that is likely to be confused with the PATAGONIA trademarks.  Patagonia is also entitled to an order requiring Defendant to destroy the Counterfeit Products or turn them over to an officer of the Court.

55.  Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

56.  Because Defendant's actions have been committed willfully, maliciously, and intentionally, Patagonia is entitled to its costs and attorneys' fees under 10 M.R.S.A. § 1531.

## SEVENTH CLAIM
## UNFAIR COMPETITION UNDER MAINE LAW

**(Deceptive Trade Practices; Deceptive Designation of Origin – 10 M.R.S.A. §§ 1211 – 1216)**

57.  Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

58.   Defendant's conduct as alleged in this Complaint constitutes "deceptive trade practices" within the meaning of 10 M.R.S.A. §§ 1212 *et seq*. in numerous respects, including but not limited to: passing off goods as those of another; causing a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing a likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by another; representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;  and others.

59.   As Patagonia is likely to be damaged by Defendant's deceptive trade practices, Patagonia is entitled to injunctive relief pursuant to 10 M.R.S.A. § 1213.  Patagonia is entitled to an injunction prohibiting Defendant from selling the Counterfeit Products, or any other products bearing a mark or design that is likely to be confused with the PATAGONIA trademarks.  Patagonia is also entitled to an order requiring Defendant to destroy the Counterfeit Products or turn them over to an officer of the Court.

60.   Patagonia is entitled to injunctive relief regardless of proof of monetary damages, loss of profits, or intent to deceive.  Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will

continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia for such harm.

61.  In light of Defendant's willful conduct, Patagonia is likewise entitled to reasonable attorney's fees pursuant to 10 M.R.S.A. § 1213.

## EIGHTH CLAIM
## TRADEMARK DILUTION UNDER MAINE LAW
### (10 M.R.S.A. § 1530)

62.  Patagonia realleges and incorporates by reference each of the allegations contained elsewhere in this Complaint.

63.  Patagonia owns valid and protectable rights in its PATAGONIA trademarks (including the P-6 logo).

64.  The PATAGONIA trademarks—registered marks in the state of California—are distinctive and famous within the meaning of 10 M.R.S.A. § 1530.

65.  Defendant's willful acts are likely to dilute the distinctive quality and/or injure the reputation of the PATAGONIA trademarks.  Defendant's acts therefore constitute trademark dilution under 10 M.R.S.A. § 1530 and the analogous statutes of other states.

66.  Patagonia is entitled to injunctive relief prohibiting Defendant from using the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.  Without injunctive relief, Patagonia has no means by

which to control the continuing dilution of the PATAGONIA trademarks.

Patagonia has been and will continue to be irreparably harmed.  No amount of

money damages can adequately compensate Patagonia for such harm.

<h2 style="text-align:center">NINTH CLAIM</h2>

<h2 style="text-align:center">TRADEMARK INFRINGEMENT UNDER MAINE COMMON LAW</h2>

67.   Patagonia realleges and incorporates by reference each of the

allegations contained elsewhere in this Complaint.

68.   Patagonia owns valid and protectable rights in its PATAGONIA

trademarks at common law.

69.   Defendant's conduct is likely to cause confusion, to cause mistake, or

to deceive as to the source of goods offered by Defendant, or as to affiliation,

connection, association, sponsorship, or approval of such goods and services, and

constitutes infringement of Patagonia's PATAGONIA trademarks at common law.

70.   Defendant's infringed Patagonia's PATAGONIA trademarks with

knowledge and intent to cause confusion, mistake, or deception.

71.   As a direct and proximate result of Defendant's activities, Patagonia

has suffered substantial damage.

72.   Unless restrained and enjoined, the conduct of Defendant will further

impair the value of the PATAGONIA trademarks and Patagonia's business

reputation and goodwill.  Patagonia has no adequate remedy at law.

73.   Patagonia is entitled to monetary damages and injunctive relief

prohibiting Defendant from using the Counterfeit Products, and any other mark or design similar to the PATAGONIA trademarks.

74.   Without injunctive relief, Patagonia has no means by which to control the continuing injury to its reputation and goodwill or that of its PATAGONIA trademarks.  Patagonia has been and will continue to be irreparably harmed.  No amount of money damages can adequately compensate Patagonia if it loses the ability to control its marks.

## **PRAYER FOR JUDGMENT**

WHEREFORE, Patagonia prays that this Court grant it the following relief:

1.     Adjudge that Defendant has promoted, distributed, offered and sold products bearing counterfeit reproductions of Patagonia's federally registered trademarks;

2.     Adjudge that Defendant has infringed the PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1114;

3.     Adjudge that Defendant has infringed the PATAGONIA trademarks in violation of Maine statutory law;

4.     Adjudge that Defendant has infringed Patagonia's common law rights in the PATAGONIA trademarks;

5.     Adjudge that Defendant has competed unfairly with Patagonia in violation of Patagonia's rights under 15 U.S.C. § 1125(a);

6.      Adjudge that Defendant has engaged in a deceptive trade practice and competed unfairly with Patagonia in violation of Maine statutory law;

7.      Adjudge that Defendant's activities are likely to dilute Patagonia's famous PATAGONIA trademarks in violation of Patagonia's rights under 15 U.S.C. § 1125(c) and/or Maine law;

8.      Adjudge that Defendant has infringed Patagonia's copyright rights in its P-6 design and P-6 Trout design;

9.      Adjudge that Defendant's actions, as outlined in the preceding paragraphs, have been willful, intentional, and conducted in reckless disregard of the possible injurious consequences;

10.     Adjudge that Defendant and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers, and any person(s) in active concert or participation with them, and/or any person(s) in privity with them, and/or any person(s) acting for, with, by, through or under them, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.      Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that bear reproductions or so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception,

on or in connection with any product that is not authorized by or for Patagonia, including, without limitation, any product or service that bears the Counterfeit Products, or any other approximation of Patagonia's trademarks;

b.    Manufacturing, producing, sourcing, importing, selling, offering for sale, distributing, advertising, or promoting any goods or services that display any words or symbols that so resemble the PATAGONIA trademarks as to be likely to cause confusion, mistake, or deception, on or in connection with any product that is not authorized by or for Patagonia;

c.    Using any word, term, name, symbol, device, or combination that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Defendant or its products with Patagonia, or as to the origin of Defendant's goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising, or likely dilution of the PATAGONIA trademarks;

d.    Further infringing the rights of Patagonia in and to its PATAGONIA trademarks, or otherwise damaging Patagonia's goodwill or business reputation;

e.    Further diluting the famous PATAGONIA trademarks;

f.    Otherwise competing unfairly with Patagonia in any manner;

g.    Further infringing Patagonia's copyright rights in its P-6 logo design, including by reproducing, distributing, or displaying such logo or any other logo or design that is substantially similar to the P-6 logo; and

h.    Continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint;

11.    Adjudge that Defendant is prohibited from applying to register any trademark or service mark which is likely to be confused with, or that dilutes the distinctive quality of, Patagonia's PATAGONIA trademarks;

12.    Adjudge that Defendant be required immediately to deliver to Patagonia's counsel its entire inventory of counterfeit and infringing products, including without limitation, patches and any other products, packaging, labeling, advertising and promotional material, and all plates, patterns, molds, matrices, files, data, and other material for producing or printing such items, that are in their possession or subject to their control and that infringe Patagonia's trademarks as alleged in this Complaint;

13.    Adjudge that Defendant, within thirty (30) days after service of the Court's judgment, be required to file with this Court and serve upon Patagonia's counsel a written report under oath setting forth in detail the manner in which it has complied with the judgment;

14.    Adjudge that Patagonia recover from Defendant its damages and lost

profits, and Defendant's profits in an amount to be proven at trial;

15.    Adjudge that Patagonia is entitled to recover statutory damages from Defendant based on Defendant's willful counterfeiting;

16.    Adjudge that Defendant be required to account for any profits that are attributable to its illegal acts, and that Patagonia be awarded (1) Defendant's profits and (2) all damages sustained by Patagonia, under 15 U.S.C. § 1117, plus prejudgment interest;

17.    Adjudge that the amounts awarded to Patagonia pursuant to 15 U.S.C. § 1117 shall be trebled;

18.    Adjudge that Patagonia recover from Defendant its damages based on Defendant's copyright infringement, or statutory damages at Patagonia's election;

19.    Adjudge that Patagonia recover punitive or exemplary damages from Defendant based on Defendant's conduct done willfully, intentionally, and in reckless disregard of its possible injurious consequences;

20.    Order an accounting of and impose a constructive trust on all of Defendant's funds and assets that arise out of its infringing, dilutive activities;

21.    Adjudge that Patagonia be awarded its costs and disbursements incurred in connection with this action, including Patagonia's reasonable attorneys' fees and investigative expenses; and

22.     Adjudge that all such other relief be awarded to Patagonia as this

Court deems just and proper.

## DEMAND FOR JURY TRIAL

Patagonia hereby demands trial by jury as to all issues triable by jury.

DATED:  March 18, 2025                Respectfully submitted,

                                                VERRILL DANA, LLP

                                  By:   */s/ Jeffrey D. Russell*_____
                                                JEFFREY D. RUSSELL (ME Bar No. 4506)

                                                One Portland Square
                                                Portland, ME 04101-4054
                                                (207) 774-4000
                                                jrussell@verrill-law.com

                                                VERSO LAW GROUP LLP

                                  By:   */s/ Gregory S. Gilchrist*_____
                                                GREGORY S. GILCHRIST
                                                RYAN BRICKER
                                                SOPHY TABANDEH
                                                PAYMANEH PARHAMI
                                                KOURTNEY SPEER

                                                565 Commercial Street, Fourth Floor
                                                San Francisco, California 94111
                                                (415) 534-0495
                                                greg.gilchrist@versolaw.com
                                                ryan.bricker@versolaw.com
                                                sophy.tabandeh@versolaw.com
                                                paymaneh.parhami@versolaw.com
                                                kourtney.speer@versolaw.com

                                                Attorneys for Plaintiff PATAGONIA, INC.